[Cite as *In re J.S.*, 2010-Ohio-2690.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF J.S., | ) | |
| | ) | |
| ALLEGED DELINQUENT CHILD. | ) | |
| | ) | |
| | ) | CASE NO. 08-MA-76 |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas, Juvenile Division of Mahoning
County, Ohio
Case No. 05JA468

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellee     Paul Gains
Prosecutor
Ralph Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant     Attorney Katherine Rudzik
26 Market Street, Suite 904
Youngstown, Ohio 44503

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: June 10, 2010

DONOFRIO, J.

{¶1} Appellant, J.S., appeals from a Mahoning County Common Pleas Court judgment adjudicating him a delinquent child for committing an act that would be rape if perpetrated by an adult and committing him to the Department of Youth Services for a minimum period of one year.

{¶2} On November 29, 2004, appellant was visiting at his friend Gerrone's house. Appellant was 15 years old at the time. While at Gerrone's house, appellant went upstairs with Gerrone's six-year-old sister. After appellant went home, the young girl told her mother that appellant had "messed with her," that he showed her his "privates," that he made her pull down her panties, and that her "private" hurt. The police were called. The girl's mother took her to the hospital emergency department the next day and later to the Tri-County Child Advocacy Center.

{¶3} A complaint was filed against appellant alleging that he was a delinquent child for committing an act that would be rape, a first-degree felony in violation of R.C. 2907.02(A)(1)(b), if committed by an adult. Appellant entered a denial to the complaint.

{¶4} The matter proceeded to an adjudicatory hearing before a magistrate. The magistrate heard testimony from a Mahoning County Children's Services representative, the alleged victim, the alleged victim's mother, a Youngstown Police Officer, a doctor who examined the alleged victim, and appellant. The magistrate then determined that appellant committed the act with which he was charged and, therefore, adjudicated him a delinquent child.

{¶5} Appellant filed objections to the magistrate's decision. The court held a hearing on the objections. It then overruled the objections and adopted the magistrate's decision, finding appellant to be a delinquent child by way of rape, and set the matter for disposition.

{¶6} The magistrate held a disposition hearing. He determined that appellant should be committed to the Department of Youth Services (DYS) for a minimum period of one year to a maximum period not to exceed his 21st birthday, fined appellant $100, and ordered him to pay costs. The court approved the

magistrate's decision and entered judgment accordingly.

{¶7} Appellant filed a timely notice of appeal on April 14, 2008.

{¶8} Appellant raises two assignments of error, the first of which states:

{¶9} "THE TRIAL COURT JUDGMENT WAS AGAINST THE WEIGHT OF THE EVIDENCE."

{¶10} Appellant argues that the finding that he committed rape was against the manifest weight of the evidence. He first argues that the victim's testimony was unreliable because (1) she was only six years old at the time of the alleged rape, (2) her story changed from the time she first told her mother what had happened to the time she told a police officer and again to the time she told the social worker, and (3) he clearly denied the victim's allegations. Appellant next argues that the testimony of Dr. Stephanie Dewar, the Children's Services doctor who examined the victim, was in direct conflict with the report of Dr. Charles Newton, the doctor who examined the victim at the hospital the day after the alleged rape.

{¶11} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997)*,* 78 Ohio St.3d 380, 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.

{¶12} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.

{¶13} Appellant was adjudicated a delinquent child for committing an act that

would be rape in violation of R.C. 2907.02(A)(1)(b) if committed by an adult.  R.C. 2907.02(A)(1)(b) provides:

{¶14} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

{¶15} "* * *

{¶16} (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶17} We must examine all of the evidence to determine whether the magistrate and the trial court lost their way in finding that appellant committed an act of rape as described in the statute.

{¶18} The first witness to testify was Janet Thomae, an intake worker at Children's Services.  Thomae interviewed the victim approximately one week after the alleged rape.  Thomae stated that the victim told her appellant raped her vaginally, anally, and orally.  (Tr. 13).  She testified that she made a finding of sexual abuse based on the victim's statement and supported medical findings made by Dr. Dewar.  (Tr. 16).  On cross examination, Thomae admitted that the police report only contained allegations of vaginal penetration.  (Tr. 22).  However, she did not believe the victim's two statements to be in conflict simply because the victim disclosed details to her that the victim did not disclose to the police officer.  (Tr. 24).

{¶19} Genevieve, the victim's mother, testified next.  Genevieve testified that on the day in question, her daughter came to her as soon as appellant left their house.  (Tr. 46).  Genevieve stated that her daughter was "kind of crying" and said that she had to tell her something. (Tr. 47).  She testified that her daughter told her that appellant "messed with" her, meaning he raped her.   (Tr. 46-47).  Genevieve testified that her daughter then told her that appellant made her pull down her panties, he pulled down his pants, and he made her do something.  (Tr. 47).  Genevieve stated that she looked in her daughter's panties and noticed blood.  (Tr. 47). She also stated that her daughter complained that her "private" was hurting.  (Tr.

47). Genevieve stated that at the time of the incident, she was in the house sleeping. (Tr. 48). Upon hearing her daughter's allegations, Genevieve first called appellant's mother and spoke to both her and appellant, but appellant denied that anything happened. (Tr. 49). She then took her daughter to the hospital. (Tr. 49). Approximately a week later, Genevieve took her daughter to the Child Advocacy Center. (Tr. 49).

{¶20} Next, the victim testified. At the time of her testimony, she was eight years old. (Tr. 82). She stated that on the night in question, she was in the living room with her brother Gerrone and appellant while her brother played a video game. (Tr. 85). She stated that appellant asked her to go upstairs and she said no. (Tr. 86). Later, she went up to her room to get something and appellant went upstairs too. (Tr. 87). She testified that appellant came into her room, grabbed her, and told her to go into her brother's room. (Tr. 88). She went with him. (Tr. 88). The victim testified that appellant took his clothes off, took her clothes off, and put his "private" in her "private." (Tr. 88-89). She stated that it hurt. (Tr. 89). She testified that appellant told her not to tell anyone, but she told her mom. (Tr. 90-91). She stated that they went to the hospital. (Tr. 91).

{¶21} Officer Anthony Harris of the Youngstown Police Department testified next. He interviewed appellant and Gerrone. According to Officer Harris, appellant stated that he was at Gerrone's house playing video games and Gerrone's little sister kept bothering him and asking him if he wanted a sucker. (Tr. 131). Appellant told her yes and went upstairs with her to get the sucker but he was only upstairs for a few seconds. (Tr. 131). Appellant further told Officer Harris that the six-year-old victim was flirting with him. (Tr. 132).

{¶22} Officer Harris also stated that he interviewed Gerrone. Gerrone told him that while appellant was at his house his sister asked appellant if he wanted to go upstairs to get some candy. (Tr. 133). Gerrone told Officer Harris that his sister and appellant were upstairs for ten to 15 minutes. (Tr. 133).

{¶23} Dr. Dewar, a pediatrician who is an expert in sexual abuse cases,

testified next. Dr. Dewar examined the victim at the Tri-County Child Advocacy Center a little over a week after the alleged rape. She also witnessed the victim's interview with Thomae. She corroborated what Thomae had testified that the victim told her. (Tr. 166). Dr. Dewar stated that she examined the victim using a colposcope, which is used to magnify the genital area. (Tr. 167). She testified that she noticed a transection of the victim's hymen. (Tr. 168). She stated that her finding was consistent with the victim's description of what happened to her. (Tr. 168-69).

{¶24} Dr. Dewar also testified regarding Dr. Newton's report. Dr. Newton was the emergency room physician who examined the victim. She noted that Dr. Newton had opined that the victim's vaginal exam was "within normal limits" and that the hymen appeared to be intact. (Tr. 169). Dr. Dewar explained this apparent inconsistency between her finding and Dr. Newton's finding. She stated that she was able to conduct a longer exam and had the benefit of using a colposcope to magnify the genital area. (Tr. 169-70). Dr. Dewar opined it was not unusual that the emergency room doctor did not find anything abnormal while she did and that this had occurred on other occasions. (Tr. 170).

{¶25} On cross examination, Dr. Dewar stated that only about 15 to 30 percent of child victims of sexual abuse have any physical findings. (Tr. 180). And she acknowledged that there was no indication in Dr. Newton's report that the victim had made any claim of anal penetration. (Tr. 192). She also acknowledged that she could not tell when the victim's hymen was torn. (Tr. 208).

{¶26} In conclusion, Dr. Dewar opined that her finding of the hymenal transection gave clear evidence of blunt force or penetrating trauma and that her physical findings, along with the victim's statement, was evidence of abuse. (Tr. 172).

{¶27} Finally, appellant took the stand in his own defense. Appellant stated that on the day in question he was at the victim's house playing video games with Gerrone. (Tr. 226-27). He stated that the victim came into the room and was

bothering them by poking them, playing with them, and teasing them as she frequently did. (Tr. 227-28). Appellant stated that at some point he went upstairs with the victim to get a sucker. (Tr. 228). Next, he went into Gerrone's room to get his coat because he was going to leave. (Tr. 228-29). Appellant stated that he then went down into the living room where he remained until his mother picked him up. (Tr. 229). Appellant testified unequivocally that he did not do anything sexual with the victim. (Tr. 232-33).

{¶28} This case, as with most rape cases, comes down to the issue of credibility. The magistrate listened to the victim's testimony and appellant's testimony and had to make a credibility determination as to who was being truthful. The victim, who was six years old at the time of the incident and eight years old at the time of her testimony, testified that appellant raped her. Appellant testified that he had no sexual contact whatsoever with the victim.

{¶29} Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must give deference to the fact finders' determination of witnesses' credibility. *State v. Jackson*, 7th Dist. No. 09-JE-13, 2009-Ohio-6407, at ¶18. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80.

{¶30} Here, the magistrate determined that the victim's testimony was credible and appellant's testimony was not. The magistrate was in the best position to make this determination. He was able to watch the witnesses as they testified and personally observe their demeanors.

{¶31} Furthermore, the other witnesses' testimony, for the most part, corroborated the victim's testimony.

{¶32} Genevieve testified that immediately after appellant left her house on the day in question her daughter came to her crying and told her that appellant

"messed with" her, showed her his private, and made her pull down her panties and "do something." Genevieve also saw blood in her daughter's panties and her daughter told her that her private was hurting.

**{¶33}** Thomae and Dr. Dewar testified that upon interviewing the victim, she revealed that appellant raped her vaginally, anally, and orally. And while the victim did not specifically tell this to her mother, it is likely that the inconsistency can be explained by the fact that she was six years old at the time and was afraid and embarrassed by the entire incident.

**{¶34}** Additionally, appellant takes issue with the fact that Dr. Dewar's findings were inconsistent with Dr. Newton's findings. However, Dr. Dewar explained that she was able to see the tear in the victim's hymen due to the fact that she used a colposcope to examine the victim's genital area. And she noted that it was not uncommon for her to find such a tear even though the emergency room physician was not able to do so due to the magnifying power of the colposcope.

**{¶35}** Given all of the evidence and deferring the magistrate's determination on credibility, the finding of rape was not against the manifest weight of the evidence. Accordingly, appellant's first assignment of error is without merit.

**{¶36}** Appellant's second assignment of error states:

**{¶37}** "THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL."

**{¶38}** Here appellant contends that his trial counsel was ineffective for failing to call a witness to contradict Dr. Dewar's testimony.

**{¶39}** Dr. Dewar testified that she examined the victim on December 7, 2004, and that her examination revealed that the victim had a tear in her hymen that had healed. Dr. Newton's report indicated that he saw no signs of abuse on the victim the day after the alleged rape.

**{¶40}** Appellant's counsel had subpoenaed Dr. Newton to testify, but he failed to appear. Appellant argues that his counsel was ineffective because he chose to proceed without Dr. Newton instead of requesting a continuance or insisting on Dr.

Newton's presence.

**{¶41}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, at paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley,* 42 Ohio St.3d at paragraph three of the syllabus.

**{¶42}** Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun* (1999), 86 Ohio St.3d 279. In Ohio, a licensed attorney is presumed competent. Id.

**{¶43}** As indicated above, appellant's counsel had subpoenaed Dr. Newton to testify. (Tr. 248). At the hearing, after the other witnesses testified, appellant's counsel informed the court that Dr. Newton was on his witness list and had been subpoenaed, but had not appeared. (Tr. 248). Counsel went on to tell the court that he was not going to ask for a material witness warrant, but instead was going to withdraw Dr. Newton as a witness. (Tr. 248).

**{¶44}** Whether or not to call a particular witness is a matter that falls within trial strategy. *State v. Treesh* (2001), 90 Ohio St.3d 460, 490. This court should not second guess trial counsel's tactics. Trial tactics are generally not subject to question by a reviewing court. *State v. Fryling* (1992), 85 Ohio App.3d 557, 562.

**{¶45}** In this case, counsel may have determined, after listening to Dr. Dewar's testimony, that he no longer needed Dr. Newton's testimony. Dr. Dewar testified as to what Dr. Newton's findings were from his report. Most importantly, she read from Dr. Newton's report his findings that the "vaginal exam [was] within normal limits," there was "no evidence of trauma," and the victim's "hymen appear[ed] intact." (Tr. 169). Presumably, Dr. Newton's testimony would have mirrored his report.

**{¶46}** Until Dr. Dewar testified as to the content of Dr. Newton's report and his specific findings, appellant's counsel likely could have believed that Dr. Newton was necessary as a witness to testify as to these matters. That is a probable reason why counsel originally subpoenaed Dr. Newton. We can conclude that it was a matter of counsel's trial strategy to decide that he no longer needed Dr. Newton's testimony once he heard Dr. Dewar's testimony. He likely concluded that Dr. Newton would have nothing new to add and that his testimony would be merely cumulative.

**{¶47}** Additionally, the magistrate had the information of the conflicting findings before him. Thus, the magistrate was able to take into consideration that Dr. Newton did not find any trauma or abnormalities during his examination of the victim the day after the alleged rape. He was able to weigh this evidence against Dr. Dewar's findings with a colposcope approximately a week later. Consequently, appellant cannot demonstrate any prejudice as a result of Dr. Newton not testifying.

**{¶48}** Accordingly, appellant's second assignment of error is without merit.

**{¶49}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, P.J., concurs.

DeGenaro, J., concurs.